**BROWN KWON & LAM LLP**
Angela Kwon, Esq. (AK7296)
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212) 295-5828
Fax: (718) 795-1642
akwon@bkllawyers.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADRIATIK BERISHA, and<br>WALTER MENDEZ,<br>*on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>- against -<br><br>BENJAMIN RESTAURANT GROUP LLC,<br>B & B RESTAURANT GROUP LLC<br>    d/b/a BENJAMIN PRIME,<br>A & B RESTAURANT GROUP LLC<br>    d/b/a BENJAMIN STEAKHOUSE 41ST<br>    STREET,<br>SSAP LLC<br>    d/b/a BENJAMIN STEAKHOUSE<br>    WESTCHESTER,<br>AP & SS RESTAURANT GROUP LLC<br>    d/b/a SEA FIRE GRILL,<br>BENJAMIN'S AT HOME LLC,<br>ALBAN PRELVUKAJ<br>    a/k/a BENJAMIN PRELVUKAJ,<br>SHABAN SINANAJ<br>    a/k/a BENJAMIN SINANAJ, and<br>ABNESHE SINANAJ,<br><br>Defendants. | Case No.: 1:24-cv-3202<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs Adriatik Berisha and Walter Mendez ("Plaintiffs"), individually and on behalf of

all others similarly situated, upon personal knowledge as to themselves, and upon information and

1

belief as to other matters, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants Benjamin Restaurant Group LLC, B & B Restaurant Group LLC d/b/a Benjamin Prime, A & B Restaurant Group LLC d/b/a Benjamin Steakhouse 41st Street, SSAP LLC d/b/a Benjamin Steakhouse Westchester, AP & SS Restaurant Group LLC d/b/a Sea Fire Grill, Benjamin's At Home LLC (collectively, "Corporate Defendants"), Alban Prelvukaj a/k/a Benjamin Prelvukaj, Shaban Sinanaj a/k/a Benjamin Sinanaj, and Abneshe Sinanaj (collectively, "Individual Defendants," and together with Corporate Defendants, "Defendants") and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and similarly situated workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), seeking from Defendants: (1) unpaid overtime wages due to off-the-clock work, (2) unpaid overtime wages due to time-shaving, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiffs also bring this action on behalf of themselves and similarly situated workers pursuant to the New York Labor Law ("NYLL") Article 6 §§ 190 *et seq.*, and Article 19 §§ 650 *et seq.*, the supporting New York State Department of Labor Regulations, and the Federal Rule of Civil Procedure 23 ("Rule 23"), seeking from Defendants: (1) unpaid minimum wage due to invalid tip credit, (2) unpaid regular and overtime wages due to off-the-clock work, (3) unpaid regular and overtime wages due to time-shaving, (4) unpaid spread-of-hours pay, (5) liquidated damages, and (6) attorneys' fees and costs.

3.      Plaintiff Adriatik Berisha further alleges, pursuant to the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215, that Defendants wrongfully terminated Plaintiff's employment in

retaliation for complaining of Defendants' unlawful wage practices, and seeks from Defendants: (1) economic damages for lost wages, (2) damages for emotional distress, (3) liquidated damages, (4) punitive damages, and (5) attorneys' fees and costs.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

5.      This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6.      This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

### *Plaintiffs*

#### *Adriatik Berisha*

8.      Plaintiff Adriatik Berisha is an adult who resides in Westchester County, New York.

9.      Plaintiff Adriatik Berisha is a covered employee within the meaning of the FLSA and NYLL.

10.      Plaintiff Adriatik Berisha retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

#### *Walter Mendez*

11.      Plaintiff Walter Mendez is an adult who resides in Queens County, New York.

12. Plaintiff Walter Mendez is a covered employee within the meaning of the FLSA and NYLL.

13. Plaintiff Walter Mendez retained Brown, Kwon & Lam LLP to represent Plaintiff in this action and has agreed to pay the firm a reasonable fee for its services.

***Defendants***

14. At all relevant times, Defendants founded, owned and operated an enterprise under the name "Benjamin Restaurant Group," including four (4) restaurants in New York with the following names and locations:

    a. "Benjamin Prime" – 23 East 40th Street, New York, NY 10016;

    b. "Benjamin Steakhouse 41st Street" – 52 East 41st Street, New York, NY 10017;

    c. "Benjamin Steakhouse Westchester" – 610 West Hartsdale Road, White Plains, NY 10607;

    d. "Sea Fire Grill" – 158 East 48th Street, New York, NY 10017; and

    e. "Champions Bar & Grill" – Arthur Ashe Stadium, 124-02 Roosevelt Avenue, Flushing, NY 11368

    (collectively, the "Benjamin Restaurants").

15. At all relevant times, Defendants owned and operated the Benjamin Restaurants as a single integrated enterprise. Specifically, the Benjamin Restaurants had a common business purpose, shared common ownership and management, engaged in interrelated operations, and had centralized control of labor relations.

16. The Benjamin Restaurants are owned and operated by Individual Defendants, Alban Prelvukaj a/k/a Benjamin Prelvukaj, Shaban Sinanaj a/k/a Benjamin Sinanaj, and Abneshe Sinanaj. See **Exhibit A**, "Our Story" section on Defendants' website.

17.     The Benjamin Restaurants are jointly promoted on Defendants' website. See **Exhibit B**, Homepage on Defendants' website, https://benjaminsteakhouse.com/.

18.     The Benjamin Restaurants are operated together by the same restaurant company, Benjamin Restaurant Group, owned and led by Individual Defendants Alban Prelvukaj (a/k/a Benjamin Prelvukaj) and Shaban Sinanaj (a/k/a Benjamin Sinanaj). See **Exhibit C**, Article on Broadway World dated May 16, 2023.[1]

19.     At all relevant times, employees, food, and supplies were interchangeable and regularly transferred among the Benjamin Restaurants. For instance, during his seven-year employment with Defendants, Plaintiff Adriatik Berisha was initially hired to work at Benjamin Steakhouse 41st Street, but was transferred to Sea Fire Grill, then Benjamin Prime, then Benjamin Steakhouse Westchester, then back to Benjamin Prime. In addition, Plaintiff Walter Mendez primarily worked at Benjamin Prime, but was recurrently sent to Benjamin Steakhouse Westchester to cover shifts and extra workload as necessary. Similarly, Plaintiffs regularly witnessed many of their co-workers being transferred or asked to cover shifts at different Benjamin Restaurants.

20.     During the two-week period starting the last week of August every year (except 2020), Defendants sent Plaintiffs and other hourly workers from Benjamin Prime, Benjamin Steakhouse 41st Street, Benjamin Steakhouse Westchester, and Sea Fire Grill to work at Defendants' pop-up restaurant named Champions Bar & Grill at the Arthur Ashe Stadium in Flushing, NY for the U.S. Open Tennis Championships.

---

[1] https://www.broadwayworld.com/bwwfood-wine/article/Benjamin-Prelvukaj-and-Benjamin-Sinanaj-on-Benjamin-Restaurant-Group-20230516.

21.     At all relevant times, the Benjamin Restaurants was operated under the same wage and hour policies established by Individual Defendants. Accordingly, Plaintiffs and similarly situated employees the Benjamin Restaurants were subject to the same wage and hour policies.

22.     At all relevant times, Defendants jointly employed Plaintiffs and similarly situated employees.

23.     At all relevant times, each Defendant had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.     At all relevant times, Defendants were and continue to be employers within the meaning of the FLSA and NYLL.

### Benjamin Restaurant Group LLC

25.     Corporate Defendant Benjamin Restaurant Group LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 52 East 41st Street, New York, NY 10017 and an address for service of process located at 143 East 47th Street, New York, NY 10017.

26.     At all relevant times, Defendants operated the Benjamin Restaurants through Corporate Defendant Benjamin Restaurant Group LLC.

27.     At all relevant times, Corporate Defendant Benjamin Restaurant Group LLC had an annual dollar volume of sales in excess of $500,000.

28.     Corporate Defendant Benjamin Restaurant Group LLC is a covered "employer" within the meaning of the FLSA and NYLL.

29.     Corporate Defendant Benjamin Restaurant Group LLC employed Plaintiffs and similarly situated employees.

30.    At all relevant times, Corporate Defendant Benjamin Restaurant Group LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

31.    At all relevant times, Corporate Defendant Benjamin Restaurant Group LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Benjamin Restaurants.

### B & B Restaurant Group LLC d/b/a Benjamin Prime

32.    Corporate Defendant B & B Restaurant Group LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located and an address for service of process located at 23 East 40th Street, New York, NY 10016.

33.    At all relevant times, Defendants operated Benjamin Prime through Corporate Defendant B & B Restaurant Group LLC.

34.    At all relevant times, Corporate Defendant B & B Restaurant Group LLC had an annual dollar volume of sales in excess of $500,000.

35.    Corporate Defendant B & B Restaurant Group LLC is a covered "employer" within the meaning of the FLSA and NYLL.

36.    Corporate Defendant B & B Restaurant Group LLC employed Plaintiffs and similarly situated employees.

37.    At all relevant times, Corporate Defendant B & B Restaurant Group LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

38.    At all relevant times, Corporate Defendant B & B Restaurant Group LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Benjamin Restaurants.

### *A & B Restaurant Group LLC d/b/a Benjamin Steakhouse 41st Street*

39.    Corporate Defendant A & B Restaurant Group LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business and an address for service of process located at 52 East 41st Street, New York, NY 10017.

40.    At all relevant times, Defendants operated Benjamin Steakhouse 41st Street through Corporate Defendant A & B Restaurant Group LLC.

41.    At all relevant times, Corporate Defendant A & B Restaurant Group LLC had an annual dollar volume of sales in excess of $500,000.

42.    Corporate Defendant A & B Restaurant Group LLC is a covered "employer" within the meaning of the FLSA and NYLL.

43.    Corporate Defendant A & B Restaurant Group LLC employed Plaintiffs and similarly situated employees.

44.    At all relevant times, Corporate Defendant A & B Restaurant Group LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

45.    At all relevant times, Corporate Defendant A & B Restaurant Group LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Benjamin Restaurants.

### *SSAP LLC d/b/a Benjamin Steakhouse Westchester*

46.    Corporate Defendant SSAP LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business and an address for service of process located at 610 West Hartsdale Avenue, White Plains, NY 10607.

47.    At all relevant times, Defendants operated Benjamin Steakhouse Westchester through Corporate Defendant SSAP LLC.

48.    At all relevant times, Corporate Defendant SSAP LLC had an annual dollar volume of sales in excess of $500,000.

49.    Corporate Defendant SSAP LLC is a covered "employer" within the meaning of the FLSA and NYLL.

50.    Corporate Defendant SSAP LLC employed Plaintiffs and similarly situated employees.

51.    At all relevant times, Corporate Defendant SSAP LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

52.    At all relevant times, Corporate Defendant SSAP LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Benjamin Restaurants.

### *AP & SS Restaurant Group LLC d/b/a Sea Fire Grill*

53.    Corporate Defendant AP & SS Restaurant Group LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business and an address for service of process located at 158 East 48th Street, New York, NY 10017.

54.    At all relevant times, Defendants operated Sea Fire Grill through Corporate Defendant AP & SS Restaurant Group LLC.

55.    At all relevant times, Corporate Defendant AP & SS Restaurant Group LLC had an annual dollar volume of sales in excess of $500,000.

56.    Corporate Defendant AP & SS Restaurant Group LLC is a covered "employer" within the meaning of the FLSA and NYLL.

57.    Corporate Defendant AP & SS Restaurant Group LLC employed Plaintiffs and similarly situated employees.

58.    At all relevant times, Corporate Defendant AP & SS Restaurant Group LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

59.    At all relevant times, Corporate Defendant AP & SS Restaurant Group LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Benjamin Restaurants.

***Benjamin's At Home LLC***

60.    Corporate Defendant Benjamin's At Home LLC is a domestic limited liability company organized under the laws of the State of New York with a principal place of business and an address for service of process located at 610 West Hartsdale Road, White Plains, NY 10607.

61.    At all relevant times, Defendants operated Champions Bar & Grill and paid its employees through Corporate Defendant Benjamin's At Home LLC.

62.    At all relevant times, Corporate Defendant Benjamin's At Home LLC had an annual dollar volume of sales in excess of $500,000.

63.    Corporate Defendant Benjamin's At Home LLC is a covered "employer" within the meaning of the FLSA and NYLL.

64.    Corporate Defendant Benjamin's At Home LLC employed Plaintiffs and similarly situated employees.

65.    At all relevant times, Corporate Defendant Benjamin's At Home LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

66.    At all relevant times, Corporate Defendant Benjamin's At Home LLC applied the same employment policies, practices, and procedures to all non-exempt employees at the Benjamin Restaurants.

### Alban Prelvukaj a/k/a Benjamin Prelvukaj

67.    Individual Defendant Alban Prelvukaj is also known as Benjamin Prelvukaj.

68.    At all relevant times, Individual Defendant Alban Prelvukaj was an owner and operator of the Benjamin Restaurants.

69.    At all relevant times, Individual Defendant Alban Prelvukaj was a principal of each of the Corporate Defendants.

70.    Individual Defendant Alban Prelvukaj is a covered "employer" within the meaning of the FLSA and NYLL.

71.    Individual Defendant Alban Prelvukaj employed Plaintiffs and similarly situated employees.

72.    At all relevant times, Individual Defendant Alban Prelvukaj was directly involved in managing the day-to-day operations of the Benjamin Restaurants. Individual Defendant Alban Prelvukaj regularly visited and communicated with the managers and employees at the Benjamin

Restaurants, supervised and instructed restaurant employees regarding their job duties, and ensured that the employees effectively serve the customers and that the business is operating efficiently and profitably.

73.    At all relevant times, Individual Defendant Alban Prelvukaj had authority over personnel or payroll decisions and employment policies, practices, and procedures at the Benjamin Restaurants.

74.    At all relevant times, Individual Defendant Alban Prelvukaj had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and conditions of their employment at the Benjamin Restaurants, including their work assignments, work schedules, pay and responsibilities.

75.    At all relevant times, Individual Defendant Alban Prelvukaj had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at the Benjamin Restaurants.

76.    At all relevant times, Plaintiffs and similarly situated employees at the Benjamin Restaurants were able to speak to Individual Defendant Alban Prelvukaj if they had any issues, complaints or requests about the terms and conditions of their employment. Individual Defendant Alban Prelvukaj had the authority to make any changes to address such issues, complaints or requests by Plaintiffs and other employees.

77.    At all relevant times, Individual Defendant Alban Prelvukaj had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at the Benjamin Restaurants.

78.     At all relevant times, Individual Defendant Alban Prelvukaj had the power to maintain employment records, including time and/or wage records of employees at the Benjamin Restaurants.

### *Shaban Sinanaj a/k/a Benjamin Sinanaj*

79.     Individual Defendant Shaban Sinanaj is also known as Benjamin Sinanaj.

80.     At all relevant times, Individual Defendant Shaban Sinanaj was an owner and operator of the Benjamin Restaurants.

81.     At all relevant times, Individual Defendant Shaban Sinanaj was a principal of each of the Corporate Defendants.

82.     Individual Defendant Shaban Sinanaj is a covered "employer" within the meaning of the FLSA and NYLL.

83.     Individual Defendant Shaban Sinanaj employed Plaintiffs and similarly situated employees.

84.     At all relevant times, Individual Defendant Shaban Sinanaj was directly involved in managing the day-to-day operations of the Benjamin Restaurants. Individual Defendant Shaban Sinanaj regularly visited and communicated with the managers and employees at the Benjamin Restaurants, supervised and instructed restaurant employees regarding their job duties, and ensured that the employees effectively serve the customers and that the business is operating efficiently and profitably.

85.     At all relevant times, Individual Defendant Shaban Sinanaj had authority over personnel or payroll decisions and employment policies, practices, and procedures at the Benjamin Restaurants.

86.     At all relevant times, Individual Defendant Shaban Sinanaj had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and conditions of their employment at the Benjamin Restaurants, including their work assignments, work schedules, pay and responsibilities.

87.     At all relevant times, Individual Defendant Shaban Sinanaj had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at the Benjamin Restaurants.

88.     At all relevant times, Plaintiffs and similarly situated employees at the Benjamin Restaurants were able to speak to Individual Defendant Shaban Sinanaj if they had any issues, complaints or requests about the terms and conditions of their employment. Individual Defendant Shaban Sinanaj had the authority to make any changes to address such issues, complaints or requests by Plaintiffs and other employees.

89.     At all relevant times, Individual Defendant Shaban Sinanaj had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at the Benjamin Restaurants.

90.     At all relevant times, Individual Defendant Shaban Sinanaj had the power to maintain employment records, including time and/or wage records of employees at the Benjamin Restaurants.

### *Abneshe Sinanaj*

91.     At all relevant times, Individual Defendant Abneshe Sinanaj was an owner and operator of the Benjamin Restaurants.

92.     At all relevant times, Individual Defendant Abneshe Sinanaj was a principal of each of the Corporate Defendants.

93.     Individual Defendant Abneshe Sinanaj is a covered "employer" within the meaning of the FLSA and NYLL.

94.     Individual Defendant Abneshe Sinanaj employed Plaintiffs and similarly situated employees.

95.     At all relevant times, Individual Defendant Abneshe Sinanaj was directly involved in managing the day-to-day operations of the Benjamin Restaurants. Individual Defendant Abneshe Sinanaj regularly visited and communicated with the managers and employees at the Benjamin Restaurants, supervised and instructed restaurant employees regarding their job duties, and ensured that the employees effectively serve the customers and that the business is operating efficiently and profitably.

96.     At all relevant times, Individual Defendant Abneshe Sinanaj had authority over personnel or payroll decisions and employment policies, practices, and procedures at the Benjamin Restaurants.

97.     At all relevant times, Individual Defendant Abneshe Sinanaj had the power to hire, fire, promote or discipline Plaintiffs and similarly situated employees, and control the terms and conditions of their employment at the Benjamin Restaurants, including their work assignments, work schedules, pay and responsibilities.

98.     At all relevant times, Individual Defendant Abneshe Sinanaj had the power to hire, fire, promote, discipline, supervise, and control the employment terms and conditions of the managers and/or supervisors of Plaintiffs and similarly situated employees at the Benjamin Restaurants.

99.     At all relevant times, Plaintiffs and similarly situated employees at the Benjamin Restaurants were able to speak to Individual Defendant Abneshe Sinanaj if they had any issues, complaints or requests about the terms and conditions of their employment. Individual Defendant Abneshe Sinanaj had the authority to make any changes to address such issues, complaints or requests by Plaintiffs and other employees.

100.    At all relevant times, Individual Defendant Abneshe Sinanaj had the power to prevent or stop any unlawful practices that harmed Plaintiffs and similarly situated employees at the Benjamin Restaurants.

101.    At all relevant times, Individual Defendant Abneshe Sinanaj had the power to maintain employment records, including time and/or wage records of employees at the Benjamin Restaurants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

102.    Plaintiffs bring the First Cause of Action, the FLSA claims, on behalf of themselves and all similarly situated current and former non-exempt, hourly employees employed at the Benjamin Restaurants owned, operated, and/or controlled by Defendants, from the date that is three (3) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter, and who elect to opt-in to this action ("FLSA Collective Members").

103.    At all relevant times, Plaintiffs and FLSA Collective Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' common policies, practices, procedures and patterns with regards to their compensation, including their willful and repeated failure to pay Plaintiffs and FLSA Collective Members the full and proper overtime wages for hours worked in excess of forty (40)

per workweek. Plaintiffs' claims stated herein are essentially the same as those of the other FLSA Collective Members.

104.    All of the work that Plaintiffs and FLSA Collective Members have performed have been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and FLSA Collective Members have performed.

105.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage and overtime wages for all of the hours they work.

106.    For purposes of notice and other purposes related to this collective action, the names and contact information of FLSA Collective Members are readily available from Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

107.    Plaintiffs bring the Second Cause of Action, the NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of all current and former non-exempt, hourly employees employed at the Benjamin Restaurants owned, operated, and/or controlled by Defendants, from the date that is six (6) years prior to the filing of this Class and Collective Action Complaint until the date of final judgment in this matter (the "Class" or "Class Members"). The Class includes a subclass consisted of tipped Class Members paid at a reduced tip credit hourly rate (the "Tipped Subclass").

108.    Excluded from the Class are Defendants, Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

109.    The members of the Class are readily ascertainable. The number and identity of the Class Members are determinable from Defendants' payroll and personnel records. The hours assigned and worked, the positions held, and the rates of pay for each Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this class action, their names and contact information are readily available from Defendants' records. Notice can be provided by means permissible under Rule 23.

110.    The potential number of Class Members is so numerous that joinder of all members is impracticable, and the disposition of their claims through this class action will benefit both the parties and the Court. Although the precise number of Class Members is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

111.    Plaintiffs' claims are typical of those claims which could be alleged by any Class Member, and the relief sought is typical of the relief which would be sought by each Class Member in separate actions.

112.    Plaintiffs and Class Members were subject to the same practices of Defendants, as alleged herein, of (i) failing to pay wages for off-the-clock work, (ii) failing to pay wages due to time-shaving, (iii) failing to pay spread-of-hours pay, in violation of the NYLL. Plaintiffs and the Tipped Subclass were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, in violation of the NYLL.

113.    Plaintiffs and Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Class Members

similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member.

114.    Plaintiffs and Class Members have all sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures under the NYLL.

115.    Plaintiffs are able and willing to fairly and adequately protect the interests of Class Members, and have no interests antagonistic to Class Members.

116.    Plaintiffs are represented by attorneys who are competent, skilled, and experienced in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

117.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each individual Class Member are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for each Class Member to redress the wrongs done to them.

118.    On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of judicial and public resources; however, treating the claims as a class action would

result in a significant saving of these costs. If appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

119.    The prosecution of separate actions by individual Class Members would create a risk of inconsistent and/or varying adjudications with respect to each Class Member, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof.

120.    Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

121.    Common questions of law and fact exist as to Class Members that predominate over any questions only affecting Plaintiffs and individual Class Members and include, but are not limited to, the following:

      a.  Whether Defendants employed Plaintiffs and Class Members within the meaning of the NYLL;

      b.  Whether Defendants failed to pay regular or overtime Plaintiffs and Class Members for off-the-clock work;

      c.  Whether Defendants failed to pay regular or overtime Plaintiffs and Class Members due to time-shaving;

      d.  Whether Defendants failed to pay Plaintiffs and Class Members the spread-of-hours pay for workdays exceeding ten (10) hours;

      e.  Whether Defendants paid Plaintiffs and the Tipped Subclass at the lawful minimum wage rate;

f.  Whether Defendants took the proper amount of tip credit allowance from Plaintiffs and the Tipped Subclass under the NYLL;

g.  Whether Defendants provided proper notice to Plaintiffs and the Tipped Subclass that Defendants were taking a tip credit;

h.  Whether Defendants provided proper wage statements informing Plaintiffs and the Tipped Subclass of the amount of tip credit taken for each pay period and other information required to be provided on wage statements;

i.  Whether Defendants kept weekly records of the amount of tip credit allowance claimed from Plaintiffs and the Tipped Subclass;

j.  Whether Defendants required Plaintiffs and the Tipped Subclass to perform non-tipped side work for more than two (2) hours or twenty percent (20%) of their workday; and

k.  Whether Defendants kept accurate records of the amounts of tips earned by Plaintiffs and the Tipped Subclass.

## STATEMENT OF FACTS

### *Unpaid Wages (Plaintiffs, FLSA Collective Members and Class Members)*

122.    Plaintiff Adriatik Berisha was employed by Defendants as a bartender from in or around January 2015 until on or around March 15, 2020 and from on or around June 22, 2020 until on or around April 5, 2022.

123.    In or around January 2015, Plaintiff Adriatik Berisha was initially hired to work at Benjamin Steakhouse 41st Street, then was transferred to work at Sea Fire Grill until in or around October 30, 2016. On or around November 1, 2016, Plaintiff Adriatik Berisha was transferred to work at Benjamin Prime until on or around March 15, 2020 when the restaurant temporarily closed due to Covid-19. On or around June 22, 2020, Plaintiff Adriatik Berisha was transferred to work at Benjamin Steakhouse Westchester until on or around December 27, 2020. Then, on or around December 28, 2020, Plaintiff Adriatik Berisha was transferred to work at Benjamin Prime until the end of his employment on or around April 5, 2022.

124.     During his employment with Defendants, Plaintiff Adriatik Berisha was recurrently sent to different Benjamin Restaurant locations to cover shifts and extra workload as necessary.

125.     From in or around April 2018 until March 15, 2020, Plaintiff Adriatik Berisha was scheduled to work five (5) days per week, from 3:00 p.m. to 11:00 p.m. without a meal break, for a total of forty (40) hours per week. However, Plaintiff Berisha regularly worked well beyond his scheduled hours, for five (5) days per week, (i) from 3:00 p.m. until a time between 12:30 a.m. and 1:30 a.m. on Mondays through Thursdays, and (ii) from 3:00 p.m. until a time between 2:30 a.m. and 3:00 a.m. on Fridays, without any meal breaks, every week, for a total of approximately fifty (50) to fifty-four (54) hours per week.

126.     From in or around June 22, 2020 until December 27, 2020, Plaintiff Adriatik Berisha was scheduled to work five (5) days per week, from 2:30 p.m. until 10:00 p.m. or 11:00 p.m. without a meal break, for a total of thirty-eight (38) to forty (40) hours per week. However, Plaintiff Berisha regularly worked well beyond his scheduled hours, for five (5) days per week, (i) from 2:30 p.m. until a time between 12:30 a.m. and 1:00 a.m. without a meal break on two (2) days, and (ii) from 2:30 p.m. until a time between 1:00 a.m. and 2:30 a.m. on three (3) days, without any meal breaks, every week, for a total of approximately fifty-two (52) to fifty-seven (57) hours per week.

127.     From on or around December 28, 2020 until the end of his employment on or around April 5, 2022, Plaintiff Adriatik Berisha was scheduled to work five (5) days per week from 3:00 p.m. to 11:00 p.m. without a meal break, for a total of forty (40) hours per week. However, Plaintiff Berisha regularly worked well beyond his scheduled hours, for five (5) days per week, (i) from 3:00 p.m. until a time between 12:30 a.m. and 1:30 a.m. on Mondays through Thursdays, and (ii) from 3:00 p.m. until a time between 2:30 a.m. and 3:00 a.m. on Fridays, without

any meal breaks, every week, for a total of approximately fifty (50) to fifty-four (54) hours per week.

128.   Plaintiff Walter Mendez was employed by Defendants as a busser, barback and runner from in or around October 2016 until on or around March 15, 2020 and in or around December 2020 until on or around July 28, 2022.

129.   During his employment with Defendants, Plaintiff Walter Mendez primarily worked at Benjamin Prime, but was recurrently sent to Benjamin Steakhouse 41st Street and Benjamin Steakhouse Westchester to cover shifts and extra workload as necessary.

130.   From the beginning of his employment in or around October 2016 until on or around March 15, 2020, Plaintiff Walter Mendez was scheduled to work six (6) days per week (i) from 5:00 p.m. to 11:00 p.m. on five (5) days, and (ii) from 3:00 p.m. to 11:00 p.m. on one (1) day, without any meal breaks, every week, for a total of thirty-eight (38) hours per week. However, Plaintiff Mendez regularly worked well beyond his scheduled hours, for six (6) days per week, (i) from 5:00 p.m. to 12:30 a.m. on five (5) days, and (ii) from 3:00 p.m. to 12:30 a.m. on one (1) day, without any meal breaks, for a total of forty-seven (47) hours per week, every week.

131.   From in or around December 2020 until on or around June 30, 2022, Plaintiff Walter Mendez was scheduled to work six (6) days per week, (i) from 10:45 a.m. to 11:00 p.m. on four (4) days, and (ii) from 3:00 p.m. to 11:00 p.m. on two (2) days, without any meal breaks, for a total of sixty-five (65) hours per week. However, Plaintiff Mendez regularly worked well beyond his scheduled hours, for six (6) days per week, (i) from 10:45 a.m. to 12:00 a.m. on four (4) days, and (ii) from 3:00 p.m. to 12:30 a.m. on two (2) days, without any meal breaks, for a total of seventy-two (72) hours per week, every week.

132.    From on or around July 1, 2022 until the end of his employment on or around July 28, 2022, Plaintiff Walter Mendez was scheduled to work six (6) days per week, from 5:00 p.m. to 11:00 p.m. every day without a meal break, for a total of thirty-six (36) hours per week. However, Plaintiff Mendez regularly worked well beyond his scheduled hours, for six (6) days per week, from 5:00 p.m. to 1:00 a.m. every day without a meal break, for a total of forty-eight (48) hours per week, every week.

133.    During their employment with Defendants, Plaintiffs regularly observed and spoke to employees who sent from one Benjamin Restaurant location to another on a temporary or permanent basis, as necessary. Based on Plaintiffs' own observations and conversations with co-workers at all different Benjamin Restaurant locations, Defendants applied the same pay policies and practices at all Benjamin Restaurants.

134.    Throughout their employment with Defendants, Plaintiffs and all other non-managerial employees at the Benjamin Restaurants, including all front-of-the-house and back-of-the-house workers, worked similar hours regularly exceeding forty (40) hours per week, i.e., between forty-two (42) and sixty (60) hours per week, every week.

135.    Throughout their employment with Defendants, Plaintiffs and all other non-managerial employees at the Benjamin Restaurants, including all front-of-the-house and back-of-the-house workers, were paid on an hourly basis.

136.    For time worked in New York City at Benjamin Prime, Benjamin Steakhouse 41st Street, Sea Fire Grill, or Champions Bar & Grill, Plaintiffs and other tipped workers at such locations were paid at an hourly rate of (i) $8.65 per hour from January 1, 2018 until December 31, 2018, and (ii) $10.00 per hour from January 1, 2019 until the end of their employment.

137.    For time worked at Benjamin Steakhouse Westchester, i.e., outside of New York City, Plaintiffs and other tipped workers at this location were paid at an hourly rate of (i) $7.50 per hour from January 1, 2018 until December 31, 2018, (ii) $8.00 per hour from January 1, 2019 until December 31, 2019, (iii) $8.65 per hour from January 1, 2020 until December 31, 2020, (iv) $9.35 per hour from January 1, 2021 until December 31, 2021, (v) $10.00 per hour from January 1, 2022 until the end of their employment.

138.    Every night throughout Plaintiffs' employment, Defendants, through the General Managers of each of the Benjamin Restaurants, i.e., Shpendi "Sean" Agaj (Benjamin Prime), Albert Belegu (Benjamin Steakhouse Westchester), Uliks "Alex" Begolli (Sea Fire Grill), Mario Buqaj (Benjamin Steakhouse 41st Street) and Valon "Victor" Dedushaj (Benjamin Restaurant Group), strictly required that all hourly workers clock out at a time between 10:00 p.m. and 11:00 p.m. and return to work until they finished all of their nightly job duties, including but not limited to cleaning, washing dishes and glasses, taking out garbage, moving tables and chairs, taking inventory, stocking, and otherwise preparing the restaurants for the next day.

139.    In accordance with Defendants' such requirement, Plaintiffs and all other hourly workers at the Benjamin Restaurants, including all front-of-the-house and back-of-the-house workers, clocked out at a time between 10:00 p.m. and 11:00 p.m. every workday and continued to work off-the-clock until they finished all of their nightly job duties. As a result, Plaintiffs regularly worked off-the-clock for one (1) to four (4) hours every night without getting paid any wages for such time throughout their employment with Defendants. Similarly, Plaintiffs regularly witnessed (i) kitchen workers (cooks and food preparers), servers, runners and barbacks working at the restaurants until a time between 11:45 p.m. and 12:00 a.m., and (ii) dishwashers, bartenders and bussers working at the restaurants until a time between 12:30 a.m. and 1:30 a.m., after being

forced to clock out at 11:00 p.m. every night. Based on Plaintiffs' own experience and observations at all Benjamin Restaurant locations, this was a company-wide policy under which Defendants required all hourly workers to clock out at a time between 10:00 p.m. and 11:00 p.m. and continue to work off-the-clock without pay every night.

140.    Moreover, throughout their employment with Defendants, when Plaintiffs received their paycheck and paystubs each pay period, Plaintiffs noticed that the work hours on the paystubs were substantially less than the time they worked while on the clock. Specifically, Defendants' paystubs for Plaintiffs were missing an average on one (1) hour of on-the-clock work time for each workday, every week. For example, during work periods when Plaintiff worked on the clock for approximately forty (40) hours per week, Defendants' paystubs for Plaintiffs regularly showed only thirty-two (32) to thirty-six (36) hours of work time. During the Covid-19 pandemic, particularly from March 2020 to April 2021, the amount of work time missing from Plaintiffs' paystubs were increased to an average of two (2) hours of on-the-clock work time for each workday.

141.    Based on Plaintiffs' own experience, observations and conversations with co-workers, all hourly workers at the Benjamin Restaurants, including all front-of-the-house and back-of-the-house workers, regularly observed missing work hours from their paychecks each week, averaging one (1) to two (2) missing on-the-clock hours per workday, throughout their employment with Defendants. As a result of Defendants' time-shaving policy, Plaintiffs and all other hourly workers at the Benjamin Restaurants were not paid their full and proper wages for all hours worked.

142.    Defendants' company-wide policies regarding off-the-clock work and time-shaving resulted in Plaintiffs and all other hourly workers at the Benjamin Restaurants not getting

paid any overtime wages or being paid significantly less overtime wages than due every week, despite actually working well beyond forty (40) hours per week.

143.    Similarly, Defendants' company-wide policies regarding off-the-clock work and time-shaving resulted in Plaintiffs and all other hourly workers at the Benjamin Restaurants not getting paid any spread-of-hours premium or being paid significantly less spread-of-hours premium than due every week, despite regularly working workdays exceeding ten (10) hours.

144.    During the two-week period starting the last week of August every year (except 2020), Defendants sent Plaintiffs and other hourly workers from Benjamin Prime, Benjamin Steakhouse 41st Street, Benjamin Steakhouse Westchester, and Sea Fire Grill to work at Defendants' pop-up restaurant named Champions Bar & Grill at the Arthur Ashe Stadium in Flushing, NY for the U.S. Open Tennis Championships.

145.    During this period for the U.S. Open every year, Plaintiffs and their co-workers worked at Champions Bar & Grill for seven (7) days per week, from 9:30 a.m. until a time between 1:00 a.m. and 2:00 a.m. without any meal breaks every workday, for a total of approximately one hundred and nine hours (109) to one hundred and fifteen (115) hours per workweek. However, Defendants compensated Plaintiffs and other hourly workers for only about fifty (50) to sixty (60) hours per workweek, which was about half of their actual hours worked. As a result of Defendants' time-shaving, Plaintiffs and all other hourly workers who worked at Champions Bar & Grill during the U.S. Open were not paid substantial amounts in wages each year.

146.    Based on Plaintiffs' observations and conversations with their co-workers at the Benjamin Restaurants, Defendants claimed a tip credit and paid Plaintiffs and all other tipped workers at the Benjamin Restaurants at the same or similar hourly rates that were at all times less than New York's minimum wage.

147.    Throughout Plaintiffs' employment with Defendants, Plaintiffs did not receive proper tip credit notice. Specifically, Defendants' wage notice or statements that were provided to Plaintiffs did not state their correct pay rate or tip credit rate.

148.    Based on Plaintiffs' observations and conversations with co-workers at the Benjamin Restaurants, Defendants failed to pay Plaintiffs and the Tipped Subclass the lawful minimum wage due to an invalid tip credit deduction.

149.    Based on Plaintiffs' observations and conversations with co-workers at the Benjamin Restaurants, Plaintiffs and the Tipped Subclass did not receive proper notice that Defendants were claiming a tip credit.

150.    Based on Plaintiffs' observations and conversations with co-workers at the Benjamin Restaurants, Plaintiffs and the Tipped Subclass did not receive notice informing them that the tips they received must be retained by them except for a valid tip pooling arrangement, or that the tip credit taken by Defendants may not exceed the value of tips that they actually received.

151.    Based on Plaintiffs' observations and conversations with co-workers at the Benjamin Restaurants, Defendants failed to provide proper wage statements informing Plaintiffs and the Tipped Subclass of the amount of tip credit taken for each pay period. In addition, the wage statements that Defendants provided to Plaintiffs and the Tipped Subclass failed to state the accurate amounts of tips earned by tipped employees.

152.    Based on Plaintiffs' observations and conversations with co-workers at the Benjamin Restaurants, Defendants failed to track daily tips earned by Plaintiffs and the Tipped Subclass, and failed to keep accurate records thereof.

153.    Based on Plaintiffs' observations and conversations with co-workers at the Benjamin Restaurants, Plaintiffs and the Tipped Subclass were required to engage more than two

(2) hours and/or twenty percent (20%) of their workdays performing non-tipped side work, including pre-shift side work, running side work, and post-shift side work. These duties included, but were not limited to, sweeping and mopping the floor; cleaning the windows; wiping the tables and counters and making sure everything is clean; cleaning the restrooms; taking out the garbage; moving tables and chairs; taking inventory; moving and stocking incoming ingredients, beverages and supplies; preparing napkins and tablecloths; polishing dishes, glasses and silverware; moving and connecting the kegs to the bar; washing cocktail glasses; and other non-tipped activities.

154.    Based on Plaintiffs' observations and conversations with co-workers at the Benjamin Restaurants, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members their full regular and overtime wages for off-the-clock work.

155.    Based on Plaintiffs' observations and conversations with co-workers at the Benjamin Restaurants, Defendants failed to pay Plaintiffs, FLSA Collective Members and Class Members their full regular and overtime wages due to Defendants' policy of time-shaving.

156.    Based on Plaintiffs' observations and conversations with their co-workers at the Benjamin Restaurants, Defendants failed to pay Plaintiffs and Class Members the spread-of-hours pay for workdays such pay was due.

157.    Defendants knowingly and willfully operated their business with a policy of failing to pay the lawful minimum wage to Plaintiffs and the Tipped Subclass, in violation of the FLSA and NYLL.

158.    Defendants knowingly and willfully operated their business with a policy of failing to pay the full and proper wages for all hours worked by Plaintiffs, FLSA Collective Members and Class Members, due to time-shaving and off-the-clock work, in violation of the FLSA and NYLL.

159.    Defendants knowingly and willfully operated their business with a policy of not paying the spread-of-hours pay to Plaintiffs and Class Members, in violation of the NYLL.

## *Wrongful Termination (Plaintiff Adriatik Berisha)*

160.    Plaintiff Adriatik Berisha was an exemplary employee during his seven-year employment with Defendants. Mr. Berisha excelled in his position as one of the top bartenders for the Benjamin Restaurants and consistently received positive feedback from guests, co-workers, and the restaurant owners and managers throughout his employment with Defendants.

161.    Plaintiff Adriatik Berisha's job and wages that he earned at the Benjamin Restaurants were very important to Mr. Berisha, and he worked extremely hard for Defendants to add value for the Benjamin Restaurants in various ways, including training new hires and assisting with the launching of new locations in Japan.

162.    In addition to the performing all of the off-the-clock work and non-tipped duties described above, Plaintiff Adriatik Berisha went above and beyond to carry out various tasks demanded by the restaurant owner and managers. Specifically, during the period Mr. Berisha worked at Benjamin Prime, Mr. Berisha was required to stay well after the restaurant closed on Fridays every week in order to serve drinks and run errands for Benjamin Prelvukaj (owner), Victor Dedushaj (director of operations), Sean Agaj (general manager), and occasionally Mario Buqaj (general manager) while they drank and talked in the restaurant until around 2:30 a.m. to 3:00 a.m. Similarly, during the period Mr. Berisha worked at Benjamin Steakhouse Westchester, Mr. Berisha was required to stay after the restaurant closed on at least two to three nights every week in order to serve drinks and run errands for Benjamin Prelvukaj (owner), Victor Dedushaj (director of operations), and Albert Belegu (general manager), while they drank and talked in the restaurant until around 1:00 a.m. and 2:30 a.m. Because Defendants required all hourly employees, including

Plaintiff Berisha, to clock out at a time between 10:00 p.m. and 11:00 p.m. every night, Mr. Berisha was not paid any wages or tips for any of the time spent working late to serve the owner and managers or performing various closing duties described above.

163.    After years of enduring Defendants' unlawful pay practices, on or around March 18, 2022, Plaintiff Adriatik Berisha complained to the General Manager of Benjamin Prime, Sean Agaj, about Defendants' demands for him to work substantial hours while off-the-clock without any pay every night. Mr. Berisha stated that he was exhausted and did not want work the late-night hours without being paid for such time. Mr. Agaj responded that his hands were tied because such pay policies were formed and imposed by the restaurant owners.

164.    Immediately after this conversation between Plaintiff Berisha and General Manager Agaj, it was clear that Mr. Agaj reported Plaintiff's complaint to restaurant owner, Benjamin Prelvukaj, and the Director of Operations for the Benjamin Restaurant Group, Victor Dedushaj, as their attitude and treatment toward Mr. Berisha drastically changed from friendly and amiable before his complaint, to cold and aloof after his complaint. During the next few weeks, Mr. Agaj started treating Plaintiff Berisha with severe hostility and Defendants started reducing or removing Plaintiff from his regular inventory and service duties. Nevertheless, Defendants' policy to require all of their hourly workers to clock out at around 10:00 p.m. to 11:00 p.m. and continue work remained in place, unchanged.

165.    After seven years of employment, Defendants terminated Plaintiff Berisha's employment on April 5, 2022, less than three weeks after Plaintiff complained to General Manager Agaj about unpaid wages. When Plaintiff asked for the reason for his termination, Defendants stated that there was no reason.

166.    Defendants engaged in unlawful retaliation against Plaintiff for complaining about Defendants' wage policies that resulted in a substantial amount of unpaid labor every workday.

167.    As a result of Defendants' wrongful termination, Plaintiff has suffered, and continues to suffer lost income as well as severe emotional distress and mental anguish, including, but not limited to, grief, shame, humiliation, stress, anxiety, loss of self-esteem and self-confidence.

## STATEMENT OF CLAIMS

### FIRST CAUSE OF ACTION
*Unpaid Wages in Violation of the Fair Labor Standards Act*
*(Plaintiffs and FLSA Collective Members)*

168.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

169.    The minimum wage and overtime provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and FLSA Collective Members.

170.    Defendants failed to pay Plaintiffs and FLSA Collective Members the full and proper overtime wages for all hours worked in excess of forty (40) per workweek, in violation of the FLSA.

171.    Defendants failed to pay wages to Plaintiffs and FLSA Collective Members for off-the-clock work, in violation of the FLSA.

172.    Defendants failed to pay wages to Plaintiffs and FLSA Collective Members by time-shaving the hours worked by employees, in violation of the FLSA.

173.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Members of their rights under the FLSA.

174.    Defendants' unlawful conduct has been willful and intentional. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Members the lawful overtime wages for all hours worked when Defendants knew or should have known such was due. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and FLSA Collective Members.

175.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to the FLSA.

176.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and FLSA Collective Members have suffered damages by being denied minimum wage and tips in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, interests, and other compensation pursuant to the FLSA.

177.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Members and the actual compensation paid to Plaintiffs and FLSA Collective Members should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

**SECOND CAUSE OF ACTION**
***Unpaid Wages in Violation of the New York Labor Law***
***(Plaintiffs and the Class)***

178.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

179.    At all times relevant, Plaintiffs and the Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

180.    Defendants failed to pay Plaintiffs and Class Members the minimum wage to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

181.    Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants are required to pay Plaintiffs and the Class the full minimum wage at a rate of (a) $13.00 per hour for all hours worked from December 31, 2017 through December 30, 2018; and (b) $15.00 per hour for all hours worked from December 31, 2018 through the present.

182.    Defendants have failed to notify Plaintiffs and Class Members of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

183.    Defendants required Plaintiffs and Class Members to perform a substantial amount of non-tipped side work in excess of two (2) hours or twenty percent (20%) of their workdays.

184.    Defendants failed to pay full and proper wages to Plaintiffs and Class Members for off-the-clock work, in violation of the NYLL.

185.    Defendants failed to pay full and proper wages to Plaintiffs and Class Members by time-shaving the hours worked by employees, in violation of the NYLL.

186.    Defendants failed to pay spread-of-hour wages to Plaintiffs and Class Members for the workdays on which the interval between the beginning and the end of their shifts exceeded ten (10) hours, in violation of the NYLL.

187.    Defendants failed to keep, make, preserve, maintain, and furnish accurate records of the amounts of tips earned by Plaintiffs and Class Members as required by the NYLL and the supporting New York State Department of Labor Regulations.

188.    Defendants failed to properly disclose or apprise Plaintiffs and the Class of their rights under the NYLL and the supporting New York State Department of Labor Regulations.

189.    As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Class are entitled to recover from Defendants their unpaid minimum wage, unpaid wages for off-the-clock work, unpaid wages due to time-shaving, unpaid spread-of-hours premium, liquidated damages, reasonable attorneys' fees and costs, interests, and other compensation in accordance with the NYLL.

### THIRD CAUSE OF ACTION
### *Retaliation in Violation of the Fair Labor Standards Act*
### *(Plaintiff Adriatik Berisha)*

190.    Plaintiff Adriatik Berisha realleges and incorporates by reference all allegations in all preceding paragraphs.

191.    Plaintiff Adriatik Berisha is an employee and a protected person within the meaning of the FLSA and Defendants are covered employers under the FLSA.

192.    The FLSA prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the FLSA. 29 U.S.C. § 215(a)(3).

193.    Defendants unlawfully retaliated against Plaintiff Adriatik Berisha on the basis of his protected activities under the FLSA by terminating his employment shortly after he made an internal complaint regarding unpaid wages.

194.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff Adriatik Berisha has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

195.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the FLSA, Plaintiff Adriatik Berisha has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

196.    At all relevant times, Defendants' unlawful discriminatory conduct was knowing, malicious, willful, and/or in reckless disregard of Plaintiff Adriatik Berisha's protected rights under the FLSA, for which he is entitled to an award of punitive damages.

197.    Due to Defendants' violation of FLSA, namely, retaliation against Plaintiff Adriatik Berisha for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages for lost wages; (2) damages for emotional distress, (3) liquidated damages, (4) punitive damages, and (5) attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
***Retaliation in Violation of the New York Labor Law***
***(Plaintiff Adriatik Berisha)***

198.    Plaintiff Adriatik Berisha realleges and incorporates by reference all allegations in all preceding paragraphs.

199.    Plaintiff Adriatik Berisha is an employee and a protected person within the meaning of the NYLL and Defendants are covered employers under the NYLL.

200.    The NYLL § 215 prohibits employers from discharging, penalizing, or in any manner discriminating or retaliating against an employee for making a verbal or written complaint regarding possible wage-and-hour violations under the NYLL.

201.    Defendants unlawfully retaliated against Plaintiff Adriatik Berisha on the basis of his protected activities under the NYLL by terminating his employment shortly after he made an internal complaint regarding unpaid wages.

202.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff Adriatik Berisha has suffered, and continues to suffer, economic harm for which he is entitled to an award of monetary damages and other relief.

203.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYLL, Plaintiff Adriatik Berisha has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, as well as emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

204.    At all relevant times, Defendants' unlawful discriminatory conduct was knowing, malicious, willful, and/or in reckless disregard of Plaintiff Adriatik Berisha's protected rights under the NYLL, for which he is entitled to an award of punitive damages.

205.    Due to Defendants' violation of NYLL, namely, retaliation against Plaintiff Adriatik Berisha for engaging in protected activities, Plaintiff is entitled to recover from Defendants: (1) economic damages for lost wages; (2) damages for emotional distress, (3) liquidated damages, (4) punitive damages, and (5) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Members and the Class, respectfully request that this Court grant the following relief:

a.    Issuance of court-authorized notice to similarly situated employees regarding the pendency of a collective action pursuant to the FLSA;

b.  Certification of this case as a class action pursuant to Rule 23;

c.  Designation of Plaintiffs as representatives of the Class and counsel of record as Class Counsel;

d.  An award of unpaid minimum wage due under the NYLL;

e.  An award of unpaid wages for off-the-clock work, due under the FLSA and NYLL;

f.  An award of unpaid wages as a result of time-shaving, due under the FLSA and NYLL;

g.  An award of unpaid spread-of-hours pay due under the NYLL;

h.  An award of liquidated damages as a result of Defendants' willful failure to pay wages, pursuant to the FLSA or NYLL;

i.  An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff Adriatik Berisha for all monetary and/or economic damages, including loss of past and future income, compensation and benefits;

j.  An award of damages against Defendants, in an amount to be determined at trial, to compensate Plaintiff Adriatik Berisha for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress;

k.  An award of punitive damages against Defendants for violation of Plaintiff Adriatik Berisha's rights, in an amount to be determined at trial;

l.  Pre-judgment and post-judgment interest;

m.  Reasonable attorneys' fees and costs of this action;

n.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

o.  An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein; and

p.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:  April 26, 2024                Respectfully submitted,

                                      **BROWN, KWON & LAM LLP**

                          By:     _/s/ Angela Kwon_

                                  Angela Kwon, Esq. (AK7296)
                                  521 Fifth Avenue, 17th Floor
                                  New York, NY 10175
                                  Tel.: (212) 295-5828
                                  Fax: (718) 795-1642
                                  akwon@bkllawyers.com
                                  *Attorneys for Plaintiffs*